The court now calls agenda number 3-115-776. People of the State of Illinois v. DeForest Clark. Ready to proceed? Counsel for the appellant. Thank you, Your Honor. May it please the court, I'm Assistant Attorney General Eric Levin on behalf of the people of the State of Illinois. I hope not to unduly repeat what the court just heard in 50 minutes of fine argument from both of my colleagues. I think I'm actually in a good situation here, but I'd like to specifically address some of the concerns that the court raised. And in that respect, I'd like to turn first. Were you listening, Mr. Levin? You were listening? I absolutely was. All right. Very interesting argument. I just wanted to make sure. And I'd actually like to address, Justice Thomas, your question. And I believe, Justice Tice, you also touched on this towards the end of the argument. What does Section 14-1d mean? And that, of course, is the language that the legislature added to the statute in 1994 expressly in reaction to this Court's decisions of People v. Beardsley and People v. Harrington. And I think what the legislature was doing there is recognizing two distinct types of conversational privacy. And essentially, this Court in Harrington and Beardsley recognized only one, and what I'd refer to as the traditional Fourth Amendment type of reasonable expectation of privacy. And it's what my opponents rely much on, the notion that there's an interest in not having your private conversation secretly overheard or intercepted. And the statute prevents that. But it also prevents a distinct interest. And the General Assembly recognized this. And that's the interest in not having even one's public utterances be secretly recorded and, in today's world, instantly broadcast permanently, irrevocably on the Internet. And in Beardsley and Harrington, this Court interpreted the statute. Those were both statutory interpretation cases. The Court interpreted the statute in those cases as applying only to that former interest that I mentioned, the interest in not being secretly overheard and recorded. And the Court said, essentially, if you speak, if you utter words in a situation where you know they can be overheard, or in Harrington, if you're actually uttering it to a particular person, you have no expectation of privacy in that Fourth Amendment sense against that person or against the people that can overhear your conversation. But in reaction to those cases, the General Assembly came back and said, no, we're recognizing, we recognize obviously that interest in privacy, but also the distinct interest in the, what I'm calling the interest against being recorded, even when you utter conversations in public. And I think Judge Posner made this point very well in his dissent in Alvarez, where he noted that even when people have conversations in public places, if you're on a train in the City of Chicago or if you're on a park bench, even if you're standing outside of a courtroom in a hallway, you have conversations with other people and you know they can be overheard, you know obviously the person you're talking to can hear what you're saying, but there's also that distinct interest you have in not having somebody secretly record what you're saying, and then in today's world, with a push of a button, have that conversation on YouTube or posted to Facebook or what have you. And so I think it's important to recognize both of these types, both of these interests in conversational privacy, and then I think that then helps us as we apply both the substantive due process analysis and the First Amendment analysis. And I think what's important to recognize here is in the substantive due process analysis, we take as a given that what the General Assembly identified as a harm is in fact a harm. And the Court, this Court did that even in Madrigal and in Carpenter and in Witt. The Court never questioned that what the General Assembly identified as a harm that the law ought to protect is in fact a harm that the law ought to protect. That's a legislative decision. The judicial question, which this Court answered in those cases, is in crafting a statute that went after those harms, did the Court do so in a reasonable manner? And in cases like Madrigal and Carpenter and Witt, it clearly didn't. For instance, in Madrigal, the Court recognized the laudable goal of protecting against identity theft. But the problem with the statute was that it criminalized such innocuous conduct as doing an Internet search to see how your friend did in the Chicago Marathon. So clearly in that sense, that's innocent conduct in the sense, as this Court later explained at Hollins, it's conduct that is not in any way germane to the harm that the legislature was going after. This case is fundamentally distinguishable. The General Assembly here identified a particular harm that it wanted to address, both in protecting the traditional reasonable expectation of privacy and in protecting  So in that sense, for substantive due process purposes, for this Court's Madrigal line of cases, the statute sweeps in no innocent conduct. My opponent and some of the questions here today invoke certain hypotheticals. What if, for instance, I think Justice Thomas asked, what if somebody were to record   And my answer to that question is, for substantive due process purposes, that poses no problem. The question is not whether in particular instances the statute might be unconstitutional as applied. For substantive due process purposes, the question is whether the language the General Assembly used is reasonably related to the legitimate evil it sought to address. What those hypotheticals might raise in a case-by-case situations are First Amendment issues or any other particular constitutional right might come into play. But I think most often in these cases it's going to be a First Amendment interest. And so with that in mind, I will turn here to the two as-applied First Amendment challenges. The first one, of course, is the challenge to the count that charged the defendant with secretly and without the Court's authorization recording court proceedings. And here the defendant has produced not a single case where any court has held that there's a First Amendment right to record court proceedings. Clearly, public officials doing their public jobs, as the Court recognized in Alvarez, often in those cases the First Amendment steps in and as applied to those Court proceedings have always been different. No. So you're saying that in the last case that you were paying attention to involving public officials in performing the duties at a public plate or on the telephone to someone is okay to record? I was listening to the prior argument, Your Honor. I can't, and I'm generally familiar with the case. I can't say I'm perfectly familiar with all of the circumstances. In general, certainly in the Alvarez situation where you have on-duty police officers. No, I'm talking about the public officials. You just mentioned that recording someone who is a public official should be okay. Certainly, generally speaking. I'm not sure that a court reporter would fall into that public official category. Obviously, I think there have to be degrees of public official, and certainly the quintessential case is a government official wielding great and immense government power, the power to arrest somebody. I'm not sure that the supervisor of court reporters really carries that type of weight. So obviously, I think that presents a more difficult question. I think here we don't have the difficult questions. Here courtrooms have always been different. This Court's rules prohibit recording in courtrooms without this Court's prior permission, and obviously now the Court has a pilot program for extended media coverage, and I believe Kane County is part of that. But even under that program, the recording has to be done with the Court's permission. This Court has never allowed secret and unauthorized recordings of court proceedings. As far as I'm aware, courts across the country and for time immemorial have prohibited recording devices in courtrooms. Courtrooms are just a unique situation, both for the courtroom integrity purposes and for the fact that many people are private citizens in courtrooms who don't ask to be there. They have to be there. You're aware that you're being recorded now. Absolutely. And I'm aware of that, and that's being done with the Court's permission at the Court's direction. I think it would be different if somebody in the audience right now were recording. I think the Court might view that differently. Or certainly in a courtroom where the Court wasn't itself recording, if somebody without the Court's permission were recording and running the defendant here not only recorded the judge who was performing his official duties, but he ran the risk of picking up any stray comment that was uttered in that courtroom, whether it was his opposing counsel leaning over to have an attorney-client conversation with his client, whether it was spectators having, you know, just a stray comment, jurors, a bailiff, et cetera. And so I think for that, that sort of explains why courts have always been different and why, while courtrooms are certainly open to the public, the right to recording courtrooms has never been recognized as being protected by the First Amendment. Mr. Levin, are you familiar with the Stevens case, United States v. Stevens? I am. A quote from that case, this is a quote, If a substantial number of its applications were unconstitutional, judged in relation to the statute's plainly legitimate sweep, they use that quote in really discussing the overbreadth doctrine, right? Exactly. A statute will be found facially invalid under the First Amendment. I know you were about to embark on as-applied challenges, and I think your position is that this, everything is within the statute's plainly legitimate sweep, right? Well, I think that here the defendant below had only raised as-applied First Amendment challenges, and so the question under an as-applied First Amendment challenge is, is the particular conduct that the defendant is charged with protected by the First Amendment? Of course, in the First Amendment context, there is the unique doctrine of overbreadth, which doesn't apply to other areas, but here the defendant, I think, concedes in his response brief that that argument was not presented below. Clearly, the circuit court didn't address it. And the Supreme Court has repeatedly said that striking a statute down as being facially overbroad is strong medicine. It should be employed sparingly. And I think certainly in a case where no record below was made on it, no argument, we have no decision from the circuit court on it, we would urge the Court not to consider that here. It's just not the proper vehicle for addressing that. We think it's the proper vehicles to address the as-applied challenges. And obviously, in a later case, if a challenger is charged with conduct that is protected by the First Amendment, that person can raise an as-applied challenge or a facial challenge. Or even in a case of the overbreadth argument, as you heard in the other case, I mean, we're coming up with example after example after example of what may be deemed to be innocent conduct. I'm just as your position that that isn't innocent conduct or that wouldn't fall under the statute or? I think my position is I think you have to look at the particular conduct. And I think some of the cited hypotheticals very likely are unconstitutional, but I think others aren't. And for instance, I'll take the hypothetical of. And isn't that what Stevens is saying? If there is enough that are, then it's facially unconstitutional? True. But I think Stevens and the other overbreadth cases make clear that it has to be a substantial amount of unconstitutional applications judged in relation to the legitimate sweep of the statute. And I think that's. And then you heard the arguments before with respect to the technology of the day and everybody having a camera in their pocket and their phone and YouTube videos and on and on and on. Well, exactly. And I think that gets to the point of I think there we're dealing with policy questions. Clearly in an Alvarez type of situation where there are core First Amendment issues at stake, it's the First Amendment trumps and it takes that out of the hands of the people. But in the vast majority of cases where, for instance, here in count two where you're talking to a private attorney in the hall room of a court way who the trial court said very likely thought the conversation was private, in those types of cases where, on the one hand, you don't have those core First Amendment issues that you had in Alvarez or in that if you click First Circuit case, and on the other hand, you do have privacy interests on the side of the people being recorded that you don't really have in the Alvarez case, in that middle ground, those vast majority of cases, it's really an issue of policy for the people to work through, how are we going to address this new technology that's continually emerging and proliferating and that's just making today's world fundamentally different than it was 20 years ago, where now anything uttered in public, essentially, we have the technology to record it and to instantly publish it worldwide. And that's... Mr. Levin, this statute could be written, though, in such a way that those examples that we've been talking about would not come under the statute, right? I would agree with that. I think certainly any statute could always be written more clearly. There's always certain scenarios that don't arise to the legislature. That's exactly what they'll do if we find it unconstitutional, won't they, the legislature? I'm certain that... Or attempt to do. I'm certain that the legislature would attempt to go back to the drawing board, because they have recognized, unlike, you know, certain other states don't currently protect this distinct interest in not being recorded. They only... They do only protect that interest in not having your conversation be overheard. Illinois has taken a different tack and made the policy decision to protect that distinct interest. And so I do think the legislature likely would go back to the drawing board. Whether they could come to agreement on any particular language, I don't know. But the legislature certainly has evinced its intent in specifically amending the decisions in Beardley and Harrington to protect that interest in conversational privacy. And it's really a question... As I was trying to get at before, I think the evolving technology no doubt has its benefits. I mean, we see in Syria and in revolutions across the world the openness and the ability to record events as they happen and then to instantly publish them has great benefits for society. But I think we also can't close our eyes to the fact that there are very serious harms to privacy prevented by such technology. And I think here, as I said, in the Alvarez type of situation or in the hypothetical that my opponent raises where there's a loud political debate happening in a public square, where the First Amendment steps in with that core interest, then as applied the statute would be unconstitutional. But in that vast majority of cases where you don't have those interests, this is really a policy question that the people have to work through, through their elected officials in determining how do we want to best balance these interests. And so I think just briefly I've touched on the as applied challenge to the courtroom recording. I think the as applied challenge to the hallway recording I think presents an even easier analysis. There's no doubt, well, the trial court even went so far as to say that it's very unlikely that that attorney thought that the conversation she was having with the defendant was not private. But there's certainly no indication that she thought the conversation was being recorded. And so there we have a stark example of this interest. And even though she had no reasonable expectation of privacy against the defendant in that traditional sense, she still had that expectation that what she was saying wasn't being recorded. Imagine if any conversation a lawyer had with an opposing counsel or an unrepresented party in the hallway of a courtroom could be recorded. It would be very chilling to the ability of people to have frank, off-the-record conversations, settlement negotiations, et cetera. And I think this would just be very – and I think Judge Posner really keyed in on this on his dissent in Alvarez. It would just be chilling to everyday conversation. The conversation you have, you know, on the street, walking to the courtroom, in Daly Plaza, on the train, you talk and you know people can overhear you, but they're not really listening to you. Or if they are, it's going to be forgotten. But if that conversation could be secretly recorded and then in the push of a button it's on YouTube for the world to see, that's a really different thing. And I think people feel it just on a subconscious level. That's a different type of interest involved. And the General Assembly here wanted to protect against that. And they drafted a statute that did just that. If there are no further questions, I will save any of my further time for rebuttal. Thank you, counsel. Counsel Cafferly. Madam Chief Justice, fellow Justices, counsel, may it please the Court, my name is Don Ramsell. I represent DeForest Clark. The gathering, what we have here really, is a case that involves a clash between two competing societal values. One being the gathering of information for the purpose of knowledge, truth, freedom of speech and press. And then we have the right of privacy. This is not new that this clash occurs on occasion, but sometimes the legislature in drafting a law swings the pendulum too far and takes away from one right too much and places too much on the other side. That's what's happened in this case. Because we understand that the gathering of information that's publicly displayed or from public officials and not expected to be kept private, that gathering of information is fundamental and represents the cornerstone, the beginning of our freedom of speech and press. Not institutional press as such, but of the ability of all of society's members to trade information. I was not sure if I wanted to mention Plato's allegory of the cave and the essential idea in the human race that we strive for total knowledge and wisdom, but audio recording is the most reliable indicator of truth. And truth is wisdom. And wisdom is knowledge. This is where our society takes us. Technology is running fast. And where truth will lead us and where total wisdom will lead us is difficult to predict. But a law that outlaws an entire form of capturing information cannot stand in a free society. This is what this law does. By banning all audio recording of any oral communication, regardless of whether it's intended to be private or not, is overbroad. It burdens our freedom of speech and press. There is no doubt there. The statute's purpose here is where we start with the analysis. No one disputes it in any of the two cases today that the purpose of the statute is conversational privacy. The moment that element was removed from the statute, the statute failed. It's not narrowly tailored to accomplish that purpose because it punishes conduct which has no relationship to privacy, and hence it violates due process. It violates freedom of speech and press by failing to be narrowly tailored again to accomplish a significant government purpose while leaving open ample alternative channels for communication of that information. Now, I hear the word surreptitious. I would remind the Court that Katz is the cornerstone of what is public and what is private in the United States Supreme Court jurisprudence. And what is made public is not private. What can be watched? We walk down the street every day. I understand the Attorney General feels that everyone should be placed on notice when they're being recorded. But somehow we have the right to know that. But we know we don't have the right to know we're being video recorded or surveyed when we walk down the street. We don't have the right when we're in a public place to choose to limit who gets to repeat what we speak to them. Once we speak in public at a level that can be overheard, we've lost all right to claim privacy. Because privacy doesn't say I'm going to choose one justice who may repeat it, another justice who may not.   But can I ask a question to Boston? Yes. Could you help me? It's a very broad statement that you just made. Yes. That any statement in public that is loud enough to be overheard is a public statement and not a private statement. Yes. That's your position? Yes. Can you give me a definition of what you think is a private statement? A whisper. That would be a private statement made in public where, by the way, your voice is offered to the listener. It would be clearly, there would be a reasonable expectation of privacy.  I think if somebody were, a third party were to try to lean in, in a conversation, invade social body space, if you will, or use a device to enhance the hearing of a conversation, that would be eavesdropping. That would be improper. But that's not what our statute addresses or speaks to. And then when you say if one's voice can be overheard in a public place, that is a public conversation, how do you define public place? Are we only our home? How do you define public place in your definition? Is the distinction the house outside your home? Is that the distinction of what's public and what's not? Clearly a public place, your home is private, what you speak inside your home. It clearly remains private. I would suggest that there might be conversations you could have in a business setting that would be considered private because they were trade secrets, they were about the operation of the business. It would be based primarily on the content and what the intent of the speaker was and the intent of the listener. Certainly when you are outside of, you're on the street, or you're relating to a public official, there can, I cannot think of much that remains private when you speak loud enough for even a complete stranger to hear you. Now, in Mr. Clark's case, and in many of them, the interesting thing is no one claims that what was spoken is inadmissible in court or cannot be repeated. No one is claiming that when Mr. Clark was in court that the things that were said are incapable of ever being repeated again. No one is saying that the things that were said between Mr. Clark and Ms. Thomas are incapable of being repeated again. Are you saying that means that they are not private? That is correct. Okay. I speak to another person and tell them something. I may wish that they not repeat it. I may have that in mind. But there's nothing that restricts another person from repeating it again. The only thing that an audio recording does is ensure that if it is repeated, it will be repeated in its most accurate sense. The only thing an audio recording does is prevent a sharp lawyer, for example, from criticizing the memory of the person who repeats it again and suggesting that person's memory is faulty. No one has the right to have an inherent ability to impeach a witness by saying that their memory is faulty. It's simply preventing them from recording what was said. In fact, in court, we would probably wish as lawyers and purpose to arrive at the truth that we would always have an audio recording of what was spoken when a dispute is in play. This is just not necessary to the actual ruling that we're asking Your Honors to make in this case. But the concept is that when the statute is so overbroad that it fails to define in any way, shape, or form what a reasonable expectation is or to limit reasonable expectation of privacy, that it just reaches too far in order to accomplish one goal and takes too much from the other. I believe that this is a very simple case in that regard. But I also want to point out that I think it would be difficult for this Court to try and parse out what parts of the statute to take away and what parts to leave in order to try and save pieces of the statute. Because we don't know what the legislature would want to do if parts of this were found unconstitutional. Maybe the legislature would decide that they would now prefer a one-party consent scenario. Maybe they would revisit the entirety of the statute, and we would no longer be And so the debate may change in terms of the give and the take. I also want to point out that there's other problems with the statute which include speaker discrimination. The fact that the police can record a conversation with a defendant, but the defendant cannot record the same conversation is speaker discrimination. And by itself is a violation of the First Amendment because of that purpose. Speaker discrimination is like content discrimination where strict scrutiny needs to be applied. And although that isn't necessary because we believe even on a rational basis test the statute fails, we would simply ask, and I do want to comment on this, I was expecting a question about whether or not the Court felt that Mr. Clark's recording inside the courtroom was problematic. Perhaps I shouldn't venture there unless I hear the question. But I'd like to hear your answer. Thank you. Thank you for that question, Your Honor. But it wouldn't be a violation of an eavesdropping statute. I don't believe personally, and it's really not necessary to the resolution of this case, that the simple recording of what takes place in court is a violation of an eavesdropping statute. It may be a violation of a courtroom procedure. I know there's cases out there that have said several times no one has the right to audio record what takes place in a courtroom. But the inception of those cases was where there were long cables running all over the place, giant television cameras, photographers running up to witnesses taking their photographs. This is not the world that we live in now. In Mr. Clark's case, what he did, and there's no evidence to the contrary, was not a distraction to the courtroom, and he was a party to the conversation. I understand the Court has the right to control its decorum. Whether or not what he did or did not do violates decorum is a different creature. But it isn't a violation of the eavesdropping statute because it was a public conversation. He was, in fact, a party to it. And there's no evidence that it disrupted any of the proceedings. So according to your definition, if a judge would engage in settlement negotiations or try to get a case settled, those are public conversations? If it took place in an open courtroom, as Mr. Clark's did, that would be problematic. If it took place in the privacy of a conference room, matters of settlement remain confidential there. But this was in an open public courtroom, not closed to the public. So what he recorded was never intended to be private. And his recording of it was not disruptive. And there were no other ample means afforded to him to obtain the information other than, I guess, his memory. Or hiring a court reporter. Or hiring a court reporter, which is an expense that I would point out a pro se defendant in a child support case may not be able to sustain. Equally true is he was not recording it for a nefarious purpose. It may have been disruptive. It may have violated court rules. I'm not here to speak to that directly. That would be up to a later court to decide if it's ever brought in that way. But he was not taking a private conversation and recording it against the intent of the statute's proper legitimate suite. If we accept your position, what authority would this Court retain to control the conduct of court proceedings? Well, because if anything's disruptive, and I did think about this, even though I opened the door to it today, I just felt... Probably not happy you opened the door, but... I'm okay with it. You know, many courtrooms do have procedures that move so rapidly that certainly in a criminal courtroom you may have witnesses that aren't intended to have their faces displayed and things of that nature. Third parties may not have the right to come in and record events. Certainly I think the Court may need to make it clear that there are other ways to obtain transcripts, et cetera. But my only point with Mr. Clark is that he did not disrupt the proceedings. He was a party to the proceedings. He wasn't a stranger that tried to foist a recording into the courtroom. There was no electronic recording system in place. There was no court reporter provided, and the local rules of the courthouse did not prohibit him from bringing in the equipment. Now, maybe that's where that should have gone. I checked. They don't have such a rule. Clearly the Supreme Court has rules, but those rules about prohibiting recording were not posted anywhere either. So I think there's room for improvement in that regard as well. Thank you. Thank you, Your Honor. Just a few brief points. My opposing counsel says that this case is about a clash between two competing societal values, and I absolutely agree with that. As I said in my opening, there's no doubt that the emerging technology has great benefits for society, but we also have to recognize that it comes with some serious privacy concerns. And the normal, the body that normally deals with balancing competing societal concerns is the General Assembly. My opponent makes the argument, and it's the defendant's view, that anything uttered in public is subject to being recorded because under the Fourth Amendment's reasonable expectation of privacy test, the person could have no expectation that the conversation couldn't be overheard. But that's a policy question. And the General Assembly here, quite clearly, in responding to Beardsley and Harrington, identified a distinct harm in having even public conversations be secretly recorded, and it sought to protect against that. I think also the defendant's argument here essentially would mean that every court rule across the country that bans recording without the court's permission is unconstitutional. And I think it would even go further than that. Quite startlingly, I think the defendant's position seemed to be that in settlement negotiations, and I don't know if you conceded this, but I think the logic of his position seems to be that because, obviously, if you're having settlement negotiations with an opposing party and with a judge, you have no reasonable expectation of privacy against them in the Fourth Amendment sense. You certainly have an expectation that there's nobody hiding outside the door that's overhearing you, but you can't be said to have any expectation that the people you're talking to are not overhearing you. In that situation, it would be unconstitutional to prohibit somebody from secretly recording those conversations. Whether or not that's a good policy is not the question presented by this case. It's whether or not the policy that the General Assembly adopted, which prohibits that type of recording, is unconstitutional. And as I said, in certain cases, on a case-by-case basis, the First Amendment or another constitutional provision very might well come into play. And I think the Alvarez case is a perfect example of this. It might come into play and prohibit the application of that statute. But in the vast majority of cases where you don't have those types of interests involved and where you do have very serious privacy interests at stake, the question of whether or not or how we want to strike this balance and how we want to deal with this emerging technology is a question for the General Assembly to decide. If there are no further questions, we would ask the Court to reverse the decision of the trial court and remand the case for further proceedings. Thank you, Counsel. Case number 115776, People of the State of Illinois v. DeForest Park, is taken under advisement as agenda number 3. Mr. Levin, Mr. Renzel, we thank you for your arguments today. I know there are some students in the audience today. I hope you found this to be beneficial. You've heard some excellent arguments. At this time, Mr. Marshall, the Supreme Court stands adjourned until 9.30 tomorrow morning.